UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 17-10125-WGY |
| | ) | |
| JOSE VASQUEZ, | ) | |
| a/k/a "Cholo," | ) | |
| a/k/a "Little Crazy," | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER**

Defendant Jose Vasquez has moved to sever his trial from that of his co-defendant, William Pineda Portillo, arguing that a joint trial would create a risk of spillover prejudice, involve inadmissible evidence, and be less efficient, Dkt. No. 260, but his motion is without merit. Vasquez and Pineda Portillo ("Defendants") are alleged to have been members of the same racketeering enterprise, MS-13, and to have participated together in a murder that furthered that enterprise and was part of its pattern of conduct. To prove the crimes with which Defendants are charged, the government will offer the testimony of many of the same law enforcement and cooperating witnesses and introduce much of the same evidence. This evidence would be admissible at separate trials just as it will be in a joint trial, and separate trials would waste judicial and governmental resources. The government respectfully requests that Defendant Vasquez's motion be denied.

**BACKGROUND**

Vasquez and Pineda Portillo are alleged to have been members of MS-13, an enterprise that engaged in racketeering activity, and to have worked together to murder Joaquin Aguilar on December 18, 2010. (Second Superseding Indictment, ¶¶ 18-20.) Both defendants are alleged to have committed this act in connection with their common enterprise: As to Pineda Portillo, the

Aguilar murder is alleged to have been an overt act in furtherance of a racketeering conspiracy. (*Id.* at ¶ 16, 16(a).)  And as to Vasquez, the Aguilar murder is alleged to have been committed for the purpose of gaining entrance to and maintaining and increasing his position in MS-13.  (*Id.* at ¶ 20.)

The evidence at trial will focus in large part on the Defendants' roles in this murder, which they participated in together.  The government will introduce testimony from a cooperating witness that members of MS-13 had been discussing murdering Aguilar for a week before his murder.  On the night of the murder, Pineda Portillo picked up Aguilar, "Cholo" (Vasquez), and three other MS members at a McDonald's in Allston and drove the group to Chelsea, where he then dropped them off.  The group walked a short distance and passed through a hole in a fence to reach a secluded area under the Fifth Street on-ramp to the highway.  There, one MS member hit Aguilar over the head with a rock, and Vasquez and another MS member stabbed Aguilar to death as he begged for his life.  A knife recovered at the murder scene later was determined to have Vasquez's palm print on it, and Aguilar's blood on the blade (red-brown stains were determined through DNA testing to be "at least 430 quintillion times more likely" to have "originated from Joaquin Aguilar").

The government also will introduce evidence from several cooperating witnesses that MS members gain full membership and increase their status and importance in the gang through the commission of murder and other acts of violence, particularly those directed against rivals. Vasquez's murder of Aguilar—who was believed, incorrectly, to be a gang rival—was the kind of act that a younger member of MS-13 would commit to become a "homeboy," or full member, of the gang.  Here, the government anticipates that the evidence will show that after Vasquez murdered Aguilar, he rose through the ranks of the gang to become the leader of the Trece Loco Salvatrucha ("TLS") clique, which operated in and around Somerville, Massachusetts.  Vasquez

went on to commit additional acts of violence, including but not limited to a September 8, 2014, stabbing of a gang rival in Chelsea, and the burying of knives that members of TLS and other cliques used to murder a 16-year-old gang rival on January 10, 2016, in Chelsea. This is conduct he has previously admitted to committing.

Pineda Portillo's criminal conduct stretches across the same timeline as Vasquez's. In 2011, shortly after the Aguilar murder, and around the time that law enforcement began questioning individuals they believed were connected to the murder, Pineda Portillo left for El Salvador. Just over a year later, he was back in the Boston area. And by April-May 2015, Pineda Portillo was identified by cooperating witnesses as a member of the TLS clique. Pineda Portillo had been recorded conspiring to murder an MS member who he believed (incorrectly) was cooperating with law enforcement, and he worked to sell a firearm to someone he believed was a member of MS-13, but who was in fact a cooperating witness for the government.

## ARGUMENT

The bar for severance is high and Vasquez's claims fall far below it. Federal Rule of Criminal Procedure 14(a) permits severance where the joinder of offenses or defendants will prejudice defendants or the government. But "[i]n order to overcome the presumption in favor of joinder, a defendant must demonstrate that she would suffer 'prejudice so pervasive that it would be likely to effect a miscarriage of justice.'" *United States v. Gianelli*, 585 F. Supp. 2d 186, 194 (D. Mass. 2008) (quoting *United States v. DeLeon*, 187 F.3d 60, 63 (1st Cir. 1999)). Here, Vasquez makes three arguments: He claims that a joint trial will (1) include acts outside the time and scope of the crime with which he is charged; (2) involve presentation of evidence that would be inadmissible as to him individually; and (3) be less efficient than two separate trials. But these arguments, taken individually or together, fail to require severance.

3

To start with the first: Vasquez's arguments regarding the time and scope reflect an unduly narrow interpretation of the crime with which he is charged. Vasquez is charged with murdering Joaquin Aguilar on December 18, 2010, in order to further his position in the MS-13 enterprise. The government's proof that Vasquez committed this murder for this purpose—to increase his position in MS-13, an enterprise engaged in racketeering activity—will include enterprise evidence as to the structure and rules of MS-13 generally, and evidence as to Vasquez's position in the gang specifically. As noted above, Vasquez already pleaded guilty to being a member of the MS-13 racketeering enterprise and admitted participating in the 2014 attempted murder as well as to burying evidence used by his clique to commit a 2016 murder. For that conduct, he was sentenced to 212 months in prison, a sentence which he currently is serving. The government anticipates introducing at least some of these facts to prove that Vasquez committed the Aguilar murder as part of a plan to further his position in MS-13—because the facts show that Vasquez's plan succeeded. Indeed, his trajectory in the gang—from 2010 when he was "Cholo," to years later when he was "Little Crazy," the TLS clique leader—is evidence of the effect violence has on a member's standing in the gang. Thus, Vasquez's claim that he is prejudiced by evidence of MS-13 acts that took place in 2015 falls flat, given that the trial will include evidence of his own conduct in connection with the MS-13 enterprise during that time.

Vasquez's argument regarding inadmissible evidence fares similarly. The foci of this trial will be the defendants' common MS-13 enterprise, and their joint participation in the murder of Joaquin Aguilar on December 18, 2010. The evidence admitted as to the murder would be admissible equally as to Vasquez as to Pineda Portillo. And while there also will be evidence of additional acts as to each defendant—as to Vasquez, the September 2014 stabbing and disposal of evidence after a January 2016 murder; and as to Pineda Portillo, the 2015 overt acts that Vasquez's

motion focuses on—Vasquez exaggerates this additional evidence's significance. Given that Defendants both are alleged to have been members of MS-13, and both committed these acts in connection with their membership in that racketeering enterprise, this evidence likely would be as admissible as enterprise evidence regarding MS-13 as it is as to each defendant. Severance is not warranted on this basis.

Nor would it be more efficient to sever these trials and try two defendants separately for the murder they participated in together in furtherance of a gang that they both were a part of. Doing so would require numerous witnesses to testify twice—including members of the victim's family, cooperating witnesses, and members of law enforcement, among others. There is no reason to subject the victim's family to such trauma, to expose cooperators to such compounding risk, and to expend such government resources. These defendants were members of the same racketeering enterprise, and participated in the same murder, and there is no question that trying them together is more efficient. Vasquez argues that severance is warranted because although he is willing to stipulate to elements of the charge against him, Pineda Portillo may not be. But a hypothetical stipulation or lack thereof does not suffice to justify severance.

That is particularly true given the availability of limiting instructions, which tool Vasquez ignores entirely. Vasquez offers no reason why limiting instructions cannot prevent the alleged prejudice with which he is concerned. Although a joint trial may create some potential for prejudice, any such prejudice can be "cured with proper [jury] instructions." *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993). *See also United States v. Melendez*, 301 F.3d 27, 36 (1st Cir. 2002) (holding jury instructions "that each count charged a separate offense and that each had to be considered separately, without allowing the verdict on one count to affect the verdict on any other count" had minimized possible prejudice from joinder); *United States v. Jones*, 10 F.3d 901,

909 (1st Cir. 1993) (stating that "any prejudice caused by joinder is best dealt with through instructing the jury to give individual consideration to each defendant"); *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977) (stating that potential for prejudice is minimized where the trial court "takes great pains to give appropriate limiting instructions"). When such instructions are given, "juries are presumed to follow" them. *Zafiro*, 506 U.S. at 540-41. Here, there is no reason to doubt that jury instructions could address the possible prejudice that Vasquez is concerned with.

**CONCLUSION**

Vasquez and Pineda Portillo were members of a common racketeering enterprise, MS-13, who participated together in a murder that furthered that enterprise and was part of its pattern of conduct. To prove the crimes with which Defendants are charged, the government will offer the testimony of the same witnesses and the same evidence. Doing all of this in separate trials would waste judicial and governmental resources. Vasquez has failed to make a "strong showing" that he will be prejudiced if these counts are tried together to an extent that could not be cured by limiting instruction. The government respectfully requests that Vasquez's motion to sever his trial from that of co-defendant Pineda Portillo be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:     */s/ Christopher J. Pohl*_____
Christopher J. Pohl
Brian A. Fogerty
Meghan C. Cleary
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, Meghan C. Cleary hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this date.

*/s/ Meghan C. Cleary*
Meghan C. Cleary
Date: May 3, 2025                                   Assistant U.S. Attorney